here in the United States v. Matos. All right, Mr. Kulp, you have reserved two minutes for rebuttal. I'll give you a second to take a minute. Good morning. May it please the court. Robert Kulp, assigned counsel for Appellant Jesus Matos. I was not involved in the trial proceedings. Of course, this is one of these Hobbs Act sting cases involving the robbery of a fictional drug courier who was claimed to be transporting 10 kilos of heroin. Mr. Matos went to trial after unsuccessful plea negotiations, was found guilty and sentenced to the mandatory minimum of 15 years. So I've raised two issues, and I'm actually going to address them in reverse order. I'm going to try to get to both of them. The jury charge issue, which I concede is a plain error issue, I want to address first because it gets a little complicated. I had to say a lot in my reply brief, and I admit that I missed something in my opening brief, which the government correctly challenged me on. So I had to get into more detail into the weeds, I suppose, on that issue. Our position is that it's plain error in a case like this involving a courier to give the jury the opportunity to propound drug quantity, which was disputed at trial. There wasn't that much disputed at this trial, but drug quantity was, or at least Mr. Matos' knowledge or foreseeability of drug quantity. In that third category that the district court gave the jury, which involves a case where it's directly and personally, it's not an exact quote, involved in the transaction, and that's a situation where you don't need knowledge or foreseeability. There was no objection, but our contention is that it's inappropriate, especially in a sting case, to give the jury an opportunity to find drug quantity without any mens rea, especially in a sting case where the evidence may come completely from someone else, a co-conspirator. Mr. Matos was directly participating in the robbery. That was the notion he and Marte and Valete, I guess, or he and Mr. Valete and Marte planned this together. They talked about 10 kilos. That was true. That was illusory, and Mr. Matos himself referred to, could it be that the guy has a truckload of kilos, and it's sold over there when talking about why there would be this shipment coming from Ohio. So isn't that enough of direct participation and knowledge himself to reflect, for the jury to find that he knew sufficiently that at least one kilo was going to be at issue? So I have two answers to that. One is, it's direct participation in the robbery, not direct participation in a drug transaction. That's where we break it up. And I think it was very easy for the jury to gravitate to that third prong of the instructions, because it was direct participation in a robbery. No doubt about it, he was apprehended in progress. But in terms of a drug transaction, I think this should be regarded as a courier case. It literally was a courier, albeit a fictional courier, which I think makes our argument stronger. And the Andino case that the government has called to my attention is specifically, as I recall, that was Judge Calabresi trying to harmonize circuit law, because I think circuit law is confusing on this point even to this day. But in Andino, they cite approvingly in a footnote the Adams case, which was a courier case. And then subsequent to that, there's the Culbertson case that I emphasize in my reply brief, which is also a courier case. And the court is drawing a line with courier cases being not ones that involve direct and personal participation. That's our argument. This might have more appeal if it were something that had been preserved below or had been argued below, rather. But here we're on plain error. And so is there a case that says it is wrong to give this instruction in what you're describing as a sting case or even a courier case? No, I don't think I had a case that's that much on point. And so isn't that kind of fatal to a plain error review? Oh, I see what you're saying. No, I thought you meant a case that went the whole way down all four prongs in a case exactly like this. I think it's plain error under Andino, Adams, and Culbertson to give this option to the jury in a courier case. That's what we say is plain error. But this is a sting case, right? He's not a courier. He's there. Well, a lot of these cases are sting cases. I'm sorry for interrupting you, Your Honor. Well, no, I mean, my question is, I mean, it's got to be an error that's clear or obvious. And so I can see, I think you're doing a good job of sort of teasing out why this might be a good way to develop the law. But on plain error review, we've got to say that this was really clear and this was bungled. It should have been caught by the district court on the spot. Yeah, and again, I'm sorry for repeating myself, but to me it's plain error because it's a courier case. And that's clear when you look at Andino, Adams, and Culbertson. And that's what makes it plain error. And then I was going to mention the Capers case that I cited towards the end of my reply in terms of the rest of the plain error test. That's a RICO case. It's not a Hobbs Act courier case, but it involves a Yates issue. In other words, where the jury is given different options to draw its conclusion. And we don't know which one they chose. And Capers says that you look at whether there is a reasonable probability that it may have affected the verdict. So that's what I'm citing for the structure of the test, although that's not a courier case. I don't think I have a case exactly like this where they went down all four prongs on plain error. Even a sting case, I guess, is what I'm asking for. But I know you wanted to get to the other point as well, so. Yeah, very briefly. I think I briefed this as adequately as I could, but just a few comments. So I understand. I'm not going to argue that it was inappropriate to admit this evidence at all on the relationship issue and so forth as the other act evidence. So I'm really focused on the rebuttal summation because the government basically asked in rebuttal a hypothetical question. Why did Mr. Matos commit these crimes? And basically said it's because he's a drug dealer. It's because he's a robber. And to me, a clear reference to the evidence that have been admitted, and I think a character reference. Now, they say in their responsive brief that, well, this was in response to this so-called baby-faced argument. And I think it's an exaggeration because the baby-faced point was made in cross-examination, not in summation. And, yes, there was cross-examination of the detective in the case about whether my client was referred to as baby-faced. And that did come out. But when it got to summation, the defense counsel specifically said, I'm not making that argument. I'm not making that argument. And yet on rebuttal, which is supposed to rebut the arguments that are made, they hit it with a club on this, what I think is a character argument. And that's it in a nutshell. But there was a jury instruction, right? Providing the jury they can only consider the other act's evidence for a limited purpose. Right, right. There was an objection during the rebuttal summation. There was no corrective instruction then. The instruction was part of the overall charge to the jury, which was delivered after the rebuttal summation. It wasn't 10 minutes after. It was at the end of the full charge. And it could have been better. It refers in the beginning to like a singular act when actually the evidence referred to more other acts, so to speak. And I think that could have been misleading to the jury that maybe they were talking about this one attempted robbery that had come into evidence that the cooperating witness and my client had done together. But yes, yes, there was an instruction, Your Honor. I certainly can't deny that. I just want to be clear. I mean, you're saying that the defense summation did not contend that Matos lacked intent to join the conspiracy? I mean, that was clearly an issue, wasn't it? His intent to join the conspiracy? His understanding of what the conspiracy was about? Well, he basically conceded the robbery. He was focused primarily on the drug quantity, as I was talking about in the other point. I'm focused on this baby-faced argument because when the government made this argument in rebuttal summation, they said, oh, these are defense counsel's words, baby-faced. And they actually weren't his words. They were words that came out of cross-examination of a government witness, and he didn't make the argument in his only summation defense counsel. I just think it was— But the crosses were certainly talking about how he used certain terms of respect, that he was so much younger, that he was deferential towards the other members of the conspiracy. I mean, if that's put—if that's elicited during the cross, it's not fair game to use in summation? Well, it was fair game—it would have been fair game in the opening summation, and it was mentioned in the opening summation. I'm not really focused on that. I say something else about the opening summation. But when he gets up and says, I'm not arguing that, and then the jury is left at the end of rebuttal summation with this dramatic thing, you know, why did he commit these crimes? Because he's a criminal. I can't think of a more clear way to invite the character reference than that. Anyway, so— Well, you've reserved two minutes for rebuttal. We'll now hear from Ms. Murray on behalf of the government. May it please the Court, my name is Juliana Murray. I'm an assistant United States attorney in the Southern District of New York. I represent the United States in this appeal, and I represented the United States in the court below. To take the second point first, I agree with Judge Sullivan's point entirely that this is certainly not a question of plain error. First, Mattos did directly participate in the drug transaction. He participated in the robbery to rob drugs, and he intended to then sell those drugs. That is direct participation in a drug transaction. But in any event, as— But usually that instruction is given to say that, you know, if you're carrying a bag, then you're on the hook for what's in the bag, right? I mean, it's different than this, where it's a conspiracy, it's a dry conspiracy, and so nobody carried anything. And in this case, not even carried a bag of shampoo, right? They're just—they show up, and if there's a belief that they discussed the quantity, then you can rely on a different prong of the instruction about knowledge. But it's not clearly exactly how this is a good instruction for what is a dry conspiracy. Well, the instruction is certainly not plain error. What Judge Atkin did was— Well, it's a standard instruction that is used all the time. I guess the issue is, should Part 3 of that instruction have been given here, where it's a dry conspiracy? There's a question whether Part 3 should have been given. Parts 1 and 2 were certainly applicable here. And under either of those parts, the defendant—the jury could properly find the defendant to be responsible for more than one kilo. The first portion says all quantities he personally conspired to possess with intent to distribute. And we know from the cooperator's testimony that they planned to split the kilos, five kilos each, and then to sell them. And then under the second prong as well, any quantity of narcotics that the co-conspirators conspired to distribute, as long as the defendant had reasonable foreseeability or knowledge. And the government— I think your argument now is that it didn't affect the outcome of the district court proceedings, as Matos has to demonstrate for plain error review. I'm asking just a more basic question. Like, is this the right instruction to be given in a dry conspiracy, where nobody carried anything and nobody was, you know, like a courier, which is normally where this instruction is given? Understood. It may be that it wasn't the right instruction to give the third prong, although I would note that the parties had agreed on the instruction and the defendant did not object to the instruction when it was given. And so that's why our argument would be that under no circumstance does this rise to the level of plain error. Also on that point, I would note that even in his argument here, the appellant conceded that the circuit law is confusing, even to this day, as to this issue. So were there an error in giving the third prong of this instruction? It is not plain. And then as your Honor correctly noted, it's the government's contention that it would not have affected the outcome of the trial. So it doesn't satisfy affecting the substantial rights or seriously affecting the fairness of the proceedings. With respect to the first point, the district court did not abuse its discretion in admitting evidence of Matos' prior crimes. And there are two components to this argument. First, the evidence was properly admitted by the district court, both as direct evidence of the charged conspiracy and under Rule 404B. The district court admitted the evidence in advance of trial, certain of the evidence as direct evidence, because it demonstrated a mutual trust among co-conspirators. It was relevant to a material issue in dispute, which was Matos' intent. It also explained why the cooperating witness brought Matos into the scheme. So it was necessary to complete the story. And then during the course of the trial, the district court made an additional ruling to permit further evidence of other crimes that Matos had committed or had told the cooperating witness about, because the defense opened the door. During the opening argument, the defense said that the informant didn't know Matos from a can of paint, which was indicating that Matos was not properly within the scope of the conspiracy. Numerous times during the course of trial in cross-examination of the law enforcement witness and then also in defense summation, the defense painted the defendant as inexperienced, as young. And sometimes those were very subtle comments, but it was a theme of the defense case. Well, I guess I'd like you to respond to Mr. Culp's argument now. He seems to have sort of winnowed this down to the rebuttal summation. So maybe we should focus there. He's suggesting that in the defense summation, they basically walked away from any argument related to the baby face waif theory. So on the facts, the government disagrees with that. There were still comments relating to the youth and inexperience and lack of intent during the defense summation. With respect to the claim now that the rebuttal remarks constituted prosecutorial misconduct that requires reversal, which is the standard, that argument should be rejected. This court has recognized the rebuttal summation. More generally, though, I mean, so do you know why he did it? And then some 20 words later, no, because he's a drug dealer, because he is a robber, because he uses guns to steal drugs and sell them. That's what he does. That's a kind of generic statement about like he's a plumber. This is his life and this is his person. It's not at all incident specific. And I was I was troubled by that. It may not be plain error, but do you believe that that's those are appropriate? Well, in hindsight, your honor, those comments were certainly inartfully worded. I don't dispute that. But the comments did not rise to the level of severe or egregious misconduct. And this court has recognized rebuttal summations frequently require improvisation. And the court does not lightly infer that every remark is intended to carry its most dangerous meaning. That's the situation here. It was a situation where it's a rebuttal argument. Defense had opened the door by the government's estimation, including, as I mentioned, in their summation, but throughout the trial. And the government was entitled to respond to those arguments that the defense had made with regard to. And I know we've covered this already, that the baby face comment was not in response to the defense summation. I don't think that was referenced at all. That term was not referenced at all in the defense summation. I believe that's correct. The baby face was referenced in the cross examination of Detective Sandoval. But with regard to the references to his age, there were multiple references to his age in the defense summation. But I don't see places where it's being his age is being connected to lack of intent. Honestly, I read it more as mitigation type comments. You've got to decide what you're going to do with this 25-year-old young man and those types of things. So even in the defense summation, I don't see the age thing as being linked specifically to some theory of lack of intent. Respectfully, Your Honor, I do think it is somewhat linked to lack of intent. I believe that the defense summation was somewhat confusing on this point. What the point that defense counsel was making. There was a lot of hypotheticals of the government has said that I'm going to stand up and say X, Y, and Z. So it wasn't clear whether they were affirmative statements by defense counsel or if it was just a rhetorical device. But I do think that some of the arguments about youth went to both sympathy, saying, you know, you have to decide what to do with this young man. I hope older and wiser people will make the right decision. But also implying the intent that defense had been arguing throughout the trial or the lack of intent. And again, I would just note for what Appellant is asking for now, which is a reversal on the basis of rebuttal remarks, the standard is prosecutorial misconduct. And that is simply not the situation here. The remarks were limited. They were brief in the context of the broader trial. And the defendant bears the heavy burden of showing that those brief comments in the rebuttal, when viewed against the entire argument to the jury, were so severe and significant as to have substantially prejudiced him. He can't show that here. And one point I would note, the defense comments during sentencing underscore that even separate and apart from the rebuttal remarks, the strength of the evidence was so substantial that Mattos can't meet his burden here of showing that those brief remarks substantially prejudiced him. Defense counsel during sentencing said the evidence was overwhelming with respect to Mr. Mattos. He had no defense of law or fact. So for those reasons and the reasons in our submissions, the government's contention is that the district court did not abuse its discretion in admitting the other act's evidence and that the government's rebuttal remarks do not alter the outcome of the trial. Happy to answer any questions. Okay. Thank you, Ms. Matos. Thank you. We'll now hear from Mr. Culp for two minutes of rebuttal. I guess one quick question I guess I'd like to start with. Are you arguing prosecutorial misconduct? I didn't call it that. I think it's the manifestation. What you're saying is improper use of the prior act evidence, right? It's the manifestation of the prior act evidence error. If it wasn't for that rebuttal summation, I may not even have raised this issue honestly, but it's the rebuttal summation that is, I was going to say straw that broke the camel back, but I think it's more of a club. It's at the end of that rebuttal summation, leaving the jury with a really emotional message. I agree, Judge Carney, with the implication of your question. I just want to clarify that this issue is preserved. The other act evidence was objected to before trial, and there was an objection to that rebuttal summation. So this issue is preserved. Even if there were implicit references to the age, which I heard a suggestion of that. Well, there were actual references to his age. I'm sorry. Multiple references to his age in the defense. Implicit arguments based on the age that you should maybe cut him some slack. Why would age be relevant for anything other than undermining notions of intent, particularly when considered in context with how it was brought out during cross? I think it's an appeal to sympathy at the very least. I don't know why else you'd mention age. I agree, but I just don't think that this club of he's a criminal, he's a drug dealer, he's a robber is the appropriate response. But, I mean, the cross was all about his deference, his use of terms of respect, his difference in age compared to the others. And so the defense summations and repeated references to his age and youth would seem to be channeling that same challenge to intent. I mean, does the government have to wait for an explicit argument before they get to respond? Like I said earlier, I think it was fair game in opening summation because it did come out in cross. In rebuttal summation, I think that was over the top. Just briefly on the earlier. But the instruction, I mean, the judge, there was an objection. The judge says, I'm going to instruct the jury on what's admissible or what this evidence can be used for. So the jury was clued in that that was something that is going to bear further instruction and then gave an instruction that was legally sufficient. Equivalent with the. I think it could have been a better instruction because it wasn't comprehensive. I made that point earlier. I don't want to dwell on it, but he did give an instruction at the end of the main charge, not when the comment was made, which I think would have been much more appropriate. Just very briefly on the first point, on the plain error argument. I think that instruction gave the jury a way out. So we can decide this without deciding what this man knew or foresaw. That's what that third prong of the drug quantity instruction. That's the invitation to the jury. Here's an easy way out of your deliberations. You don't have to worry about it. That's why I think it's dangerous, especially in a sting case, as I've said multiple times. But it's not enough for you to say that it maybe would have had an effect, right? Because it was unpreserved, because you didn't make it below on plain error review, you've got the burden of showing that it would have affected the outcome. Yes. Yes. Substantial probability that it may have affected the outcome. I say that happened here. And just on the point about the confusion in the law, I am saying that there's confusion whether this third prong is always part of the circuit's law. I think that's confusing. But for purposes of the argument I'm making here, I'm accepting that the Andino case that the government relies on is circuit law. I'm just saying that Andino and Adams and Culbertson require that this instruction not be given under existing law. I don't think that's confusing. The other part is confusing. All right. Thank you very much. Thank you, Mr. Schultz. Thank you, Ms. Murray. We will reserve decision.